IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIMOTHY J. CUNNINGHAM SR.,                )
#R05718,                                                     )
                                                                      )
      Plaintiff,                                        )
                                                                      )
      v.                                                      )            Case No.   21-cv-451-RJD
                                                                      )
DEREK JOHNSON,                                   )
                                                                      )
      Defendant.                                      )


**<u>ORDER</u>**

**DALY, Magistrate Judge:**

     Plaintiff Timothy Cunningham, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983, alleging deprivations of his constitutional rights at Lawrence Correctional Center ("Lawrence"). Plaintiff alleges that on March 31, 2019, Defendant Johnson dismissed Plaintiff's ADA attendant, carelessly rammed Plaintiff into a door frame while pushing his wheelchair, and then denied him medical treatment for his neck injury. (Doc. 1, pp. 18-19). After the threshold review, Plaintiff was allowed to proceed on the following claims:

> Count One:   First Amendment retaliation claim against Johnson for denying Plaintiff access to medical care on March 31, 2019, in retaliation for Plaintiff filing a lawsuit against Johnson.

> Count Three:  Eighth Amendment deliberate indifference to serious medical needs claims against Johnson for denying Plaintiff access to medical treatment for a neck injury on March 31, 2019.

(Doc. 10). Defendant filed a motion for summary judgment (Doc. 23) that is now before the Court. Plaintiff did not file a response. For the reasons set forth below, Defendant's motion is

Page **1** of **14**

**GRANTED**.

## Factual Background

At all times relevant to the complaint, Plaintiff was an inmate within the IDOC and was housed at Lawrence.  (Timothy Cunningham's Deposition, Doc. 24, p. 22).  Plaintiff was in a wheelchair and had an ADA attendant.  (*Id.¸* pp. 22-23).  At all relevant times, Defendant Johnson was a correctional officer at Lawrence and did not provide any medical treatment to inmates.  (*Id.*, pp. 22-24).  In 2016, Plaintiff filed a complaint against IDOC and several correctional officers, tilted *Cunningham v. Bridwell et al.*, case number 16-CV-1360-MJR.  (*See* Doc. 24, pp. 24, 36; *Cunningham v. Bridwell et al.*, No. 16-CV-1360-MJR, Doc. 1).  Plaintiff asserted, *inter alia*, a First Amendment claim of retaliation against Defendant Johnson and other correctional officers for allegedly denying Plaintiff ice distribution between June 19, 2015, and October 22, 2015, conducting compliance checks, and cutting short meal time in retaliation for Plaintiff filing grievances.  (*Id.*).  In 2017, an order was entered severing Plaintiff's several claims into five separate actions and dismissing Johnson and other defendants from the original action.  (*Cunningham v. Bridwell et al.*, No. 16-CV-1360-MJR, Doc. 10).  Plaintiff's retaliation claims against Johnson and other correctional officers were severed into *Cunningham v. Falmier et al.*, case number No. 17-CV-126-RJD.  (*See Id.*; Doc. 1, p. 19).  Based on public record, Johnson remained a party in the severed case until he was dismissed with prejudice on July 8, 2021.  (*See Cunningham v. Falmier*, No. 17-CV-126-RJD, Doc. 160).

On March 31, 2019, Plaintiff was in the waiting area of Lawrence Health Care Unit ("HCU") along with his ADA attendant, awaiting an insulin delivery.  (Doc. 24, pp. 23-24).  Johnson, who was the guard at the HCU, called Plaintiff for a pat down before the insulin delivery.  (*Id.*).  Johnson dismissed Plaintiff's ADA attendant and began to push Plaintiff in the wheelchair

in the HCU.   (*Id.*).   While pushing Plaintiff in the wheelchair, Johnson "rammed [Plaintiff] into a steel door frame."   (*Id.*, p. 24).   At that time, Plaintiff "didn't realize that [he] injured [his] neck."   (*Id.*).   Plaintiff told Johnson, "[w]ow, that hurt," while "rubbing [his] neck."   (*Id.*, p. 26).   Plaintiff believed the neck pain would go away and thought it was something minor.   (*Id.*).   Immediately thereafter, Plaintiff saw a nurse in order to receive his insulin.   (*Id.*, pp. 27-28).   He did not discuss any neck pain with the nurse because he "hop[ed] that the pain would subside and that [he] would be okay."   (*Id.*, p. 28).   He thought receiving his insulin shot was "more important than rubbing [his] neck and having what [he] considered at the time . . . a minor pain."   (*Id.*).

After receiving his insulin shot, Plaintiff was escorted back to the waiting room of the healthcare unit.   (*Id.*, p. 28).   "[D]uring that time, [Plaintiff] was rubbing [his] neck and trying to flex it and get it to stop hurting."   (*Id.*, p. 29.)   While Plaintiff was in the waiting room, Johnson would periodically come to the door to call the next person in line to see the medical staff.   (*Id.*).   At one point, Plaintiff told Johnson: "I need to see the nurse.   There is something wrong," to which Johnson responded, "[y]ou're not going to see the nurse."   (*Id.*).   Plaintiff also mentioned his prior suit against Johnson, telling him, "You can't do that because I'm suing you," to which Defendant responded, "[n]o, I've been dismissed from that."   (*Id.*, pp. 37-38).   Once all inmates received their insulin shots, they were sent to the chow hall.   (*Id.*, pp. 29-30).   While at the chow hall, Plaintiff "talked to the lieutenant and [] told him what happened and the fact that [] Johnson would not allow [him] to see the nurse."   (*Id.*).   The lieutenant sent Plaintiff back to the HCU, where he saw a nurse.   (*Id.*, p. 29).

In the HCU, Plaintiff was prescribed ice and ibuprofen but was not referred to a doctor.   (*Id.*, pp. 30-31).   He returned to the housing unit and put ice on his neck, which "didn't help" with his pain.   (*Id.*).   The next day, Plaintiff put in a nurse sick call slip to see a nurse.   (*Id.*).   Plaintiff

testified that placing a nurse sick call was the proper procedure in order to be seen at the HCU, and he did not do so until the day after his alleged injury. (*Id.*, p. 33).   Plaintiff was thereafter seen by a doctor who ordered him x-rays.   (*Id.*, pp. 31-32).   He was further prescribed tramadol and a muscle relaxer and was sent to a neurologist who prescribed him exercises.   (*Id.*, at 31, 34-35). He testified that his injury "was a muscular/tendon/nerve problem that was caused by being . . . dragged into the door frame"; it was "described by a doctor at one point as a whiplash type of injury" or "something similar to whiplash."   (*Id.*, pp. 25-26).   Plaintiff testified that the pain in his neck ultimately resolved.   (*Id.*, p. 31).   He is still experiencing "periodic stiffness and pain," which, however, resolves when he is doing his prescribed exercises.   (*Id.*, p. 42).   There is no medical record connecting Plaintiff's neck pain with the incident on March 31, 2019.   (*Id.*, p. 31).

Plaintiff further testified that he believed Johnson's conduct on March 31, 2019, was in retaliation for the prior suit he filed "in approximately 2015".   (*Id.*, pp. 23, 36-37).   He testified that Johnson "had been either dismissed or overlooked by the court and had escaped the prosecution in that case," but Plaintiff "got him back in just before he rammed [Plaintiff] into the door frame."   (*Id.*, pp. 36-37).   Based on public records, on March 31, 2019, Johnson was still a defendant in Plaintiff's prior action and was dismissed with prejudice on July 8, 2021.   *See Cunningham v. Falmier*, No. 17-CV-126-RJD, Doc. 160).

In a Sworn Affidavit submitted in support of the Complaint, inmate Charles Fletcher attested that on March 31, 2019, he was at the HCU, where he received a shakedown from Johnson. (Doc. 1, p. 25).   At that time, Plaintiff was already at the Accu-Check station alone in his wheelchair, and his [ADA] attendant [] Allen [] had returned to the waiting area after pushing" Plaintiff in the HCU.   (*Id.*).   Fletcher saw "Johnson grab the handles of [Plaintiff's] wheelchair recklessly and plow him into the right-side door jamb of the Lab room doorway" in the HCU.

(*Id.*).   "Cunningham was roughly jolted, and almost fell out the side of his wheelchair which was missing the left armrest/sideboard."   (*Id.*).

## <u>Summary Judgment Standard</u>

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).   The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Seventh Circuit has stated that summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.   *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).   The moving party bears the initial burden of producing evidence that identifies those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact.

*Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)).   After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to set forth specific facts showing there is a genuine issue for trial.   Fed. R. Civ. P. 56(e)(2).   The non-moving party may not rely merely on allegations or denials in its own pleading.   *Id.*   The opposing party must, instead, go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.   *Celotex*, 477 U.S. at 324.

<u>Discussion</u>

**Count One:   *First Amendment retaliation claim against Johnson for denying Plaintiff access to medical care on March 31, 2019, in retaliation for Plaintiff filing a lawsuit against Johnson.***

A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution.   *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).   The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action.   *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

Defendant Johnson does not argue that Plaintiff failed to meet the first and second requirements—that Plaintiff engaged in activity protected by the First Amendment and that Plaintiff suffered a deprivation that would likely deter future First Amendment activity.   As such, the Court considers these issues conceded for purposes of summary judgment.   Defendant

Johnson, however, argues that Plaintiff cannot demonstrate that his First Amendment activity (filing the lawsuit) was the reason that Defendant dismissed his ADA attendant and rammed him into the door.  (Doc. 24, p. 9).

At the summary judgment stage, the Seventh Circuit has held that the burden of proving causation is split between the parties.  *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a prima facie case, the plaintiff must produce evidence, direct or circumstantial, that his speech was at least a "motivating" factor in the defendant's decision to take retaliatory action.  *Id.*  Circumstantial evidence can include "suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at" the plaintiff.  *Kidwell*, 679 F.3d 965 (citing *Long v. Teachers' Retirement Sys. of Ill.*, 585 F.3d 344, 350, (7th Cir.2009)). However, suspicious timing, in and on itself, will "'rarely be sufficient'" to establish causation for purposes of summary judgment unless the plaintiff can demonstrate that the adverse action "follows close on the heels of protected expression," and there is evidence that the defendant was aware of the protected conduct.  *Id.* (*quoting Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir.2005; *Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir.2001) (internal citation omitted)). Thus, the court will typically not infer causation solely on the basis of suspicious timing unless there is only a few days lapse between the protected activity and the adverse action.  *Id.*

Once the plaintiff meets his burden, the burden shifts to Defendants to show that the harm would have occurred anyway.  *Greene v. Doruff,* 660 F.3d 975, 979 (7th Cir. 2011).  If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim.  *Kidwell*, 679 F.3d at 965.

First, the Court notes that based on the preliminary review of the Complaint pursuant to Section 1915A, Plaintiff was allowed to proceed on Count One only with respect to the allegation that Johnson denied Plaintiff access to medical care on March 31, 2019, in retaliation for Plaintiff filing a lawsuit against Johnson.   (Doc. 10).   Accordingly, any allegations that Johnson dismissed Plaintiff's ADA attendant and rammed him into the door in retaliation for Plaintiff filing a lawsuit against Johnson fall outside the claims in which Plaintiff was allowed to proceed in this matter. The Court, however, will still consider whether such evidence is sufficient to survive summary judgment as a complaint may be amended at any time to conform to evidence. *See Winger v. Winger*, 82 F.3d 140, 144 (7th Cir. 1996).

Here, the evidence before the Court is not sufficient to establish that Plaintiff's filing of the suit in 2016 was a motivating factor in Defendant Johnson's decision to dismiss Plaintiff's ADA attendant, carelessly ram him into the door frame and then deny him medical treatment for his neck pain.   Plaintiff is relying exclusively on the general timing of the events to establish his prima facie case.   He argues that he had originally filed a suit "in approximately 2015" against Johnson and other correctional officers for things they were doing to retaliate for grievances Plaintiff had filed.   (Doc. 24, p. 23, 36).   Specifically, Plaintiff testified:

> Johnson was. . . originally part of that [suit], and I had been suing him.  In fact, he had been either dismissed or overlooked by the court and had escaped the prosecution in that case.  And I got him back in just before he rammed me into the door frame.  So I believe it was retaliation for getting him back in, which he claimed he didn't know at the time, which I think he did."

However, Plaintiff's contention that Johnson was dismissed or overlooked from the prior suit and he "got him back in just before" the March 31, 2019, incident is rebutted by the public record.   The public record shows that Johnson was an active party to the severed action since at least October 26, 2017, when he executed a waiver of service.   (*See Cunningham v. Falmier*, No.

17-CV-126-RJD, Docs. 37, 39).   There is nothing in the record supporting Plaintiff's contention that he "got [Johnson] back in [the case] just before" the March 31, 2019, incident.

Notably, even if that was the case, there is nothing in the record supporting Plaintiff's contention that Johnson was aware Plaintiff had just "got [Johnson] back" in the case.   In fact, Plaintiff testified that he told Johnson: "You can't do that.  I'm suing you," to which Johnson responded, "No, I've been dismissed; I've been dismissed from that." (Doc. 24, p. 38).   In other words, there is nothing in the record aside from Plaintiff's testimony that Johnson was aware of any recent changes in the pending suit and that he retaliated against Plaintiff on that basis.   Based on the record, the Court cannot find that there is a sufficient "tie" between Plaintiff's prior suit that was initiated in 2016 and Johnson's conduct on March 31, 2019.   *See Dace v. Smith-Vasquez*, 658 F.Supp.2d 865, 881 (S.D. Ill. Sept. 8, 2009) ("The fact that one event preceded another does nothing to prove the first event caused the second").

For the reasons set forth above, Defendant Johnson is entitled to summary judgment on Count One.   Because the Court finds Defendant did not violate Plaintiff's constitutional rights, it need not consider the question of qualified immunity.

**Count Three: Eighth Amendment deliberate indifference to serious medical needs claims against Johnson for denying Plaintiff access to medical treatment for a neck injury on March 31, 2019.**

In Count Three of the Complaint, Plaintiff claims that Johnson was deliberately indifferent to Plaintiff's serious medical needs by denying Plaintiff access to medical treatment for his neck injury on March 31, 2019.   (Doc. 1, pp. 18-19).   The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently

serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). A medical condition, such as neck pain, that may result in further significant injury or unnecessary and wanton infliction of pain, if not treated, can be considered serious, even if not life-threatening. *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999).

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness, as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference.

*Greeno*, 414 F.3d at 653.   A factfinder may also conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.   *Id.* (internal quotations omitted). The Court examines the totality of the medical care provided, and isolated incidents of delay do not rise to the level of deliberate indifference.   *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir.2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1374–75 (7th Cir.1997).

Regarding the first prong of the test, the Court cannot find that Plaintiff's neck injury was not a serious medical condition.   Plaintiff testified that he saw several nurses and doctors concerning his neck pain.   (Doc. 24, pp. 25-26, 31-34).   He specifically testified that he was prescribed tramadol and a muscle relaxer, had x-rays, and was sent to a neurologist who prescribed him exercises.   (*Id.*, at 31, 34).   He testified that his injury "was a muscular/tendon/nerve problem that was caused by being . . . dragged into the door frame"; it was "described by a doctor at one point as a whiplash type of injury" or "something similar to whiplash."   (*Id.*, pp. 25-26).   Reading the facts in the light most favorable to Plaintiff, as the Court must at this point in the proceedings, and given Plaintiff's testimony that multiple physicians and nurses examined him and determined that his neck injury required treatment, the Court cannot conclude that Plaintiff's neck pain was not a serious medical condition.

As to the second prong of the test, however, and given the information available to Johnson at the time he denied Plaintiff's request to see the nurse, the record does not support a finding that Johnson acted with deliberate indifference to Plaintiff's serious medical need.   While Johnson was aware that Plaintiff felt some pain when Johnson rammed him into the door frame, Plaintiff's reaction, "Wow that hurt," was not sufficient to communicate to a lay person a risk of serious harm.   (Doc. 24, p. 26).   In fact, Plaintiff testified that even he considered his injury to be "something minor" at that point and believed that "the neck pain would go away" so as not to even

discuss it with the nurse that he saw immediately after his injury.   (*Id.*).   He thought receiving his insulin shot was "more important than rubbing [his] neck and having what [he] considered at the time . . . a minor pain."   (*Id.*).

Plaintiff's communication of his pain and injury to Johnson after he was escorted to the waiting area also falls short of establishing the subjective component of a deliberate indifference claim.   Plaintiff testified that, while in the waiting area, he told Johnson he "need[ed] to see the nurse" because there was "something wrong," to which Johnson responded, "[y]ou are not going to see the nurse."   (Doc. 24, p. 29.).   Later on, Plaintiff told Johnson, "You can't do that because I'm suing you," to which Defendant responded, "[n]o, I've been dismissed from that."   (*Id.*, pp. 37-38).   Plaintiff cannot, and does not, claim that Johnson denied him access to medical care altogether.   (*See, e.g.*, Doc. 24, pp. 27-28).   In fact, Plaintiff testified that Johnson let him see the nurse and receive the insulin shot immediately after Johnson rammed him into the door frame. (*Id.*).   There is no evidence in the record that Johnson obstructed Plaintiff in any way from communicating his neck pain and need for treatment with the nurse who was administering his insulin shot.   (*Id.*).   Further, Plaintiff's testimony indicates that Johnson was arranging insulin shots for the remaining prisoners at the time Johnson told Plaintiff that he was "not going to see the nurse"— and after Plaintiff had already seen a nurse for his insulin shot.   (*Id.*, p. 29).   Plaintiff further testified that the proper procedure in order to be seen at the HCU was placing a nurse sick call, which he did not do until the day after his alleged injury.   (*Id.*, p. 33).   He also testified that he did see the nurse for his neck injury later that day per the order of a lieutenant.   (*Id.*, pp. 29-30).   Thus, the crux of the issue is whether a few hours delay of treatment in this instance rises to deliberate indifference, and the Court finds that it does not.

The Seventh Circuit has remarked that "[d]elay is not a factor that is either always, or

never, significant.  Instead, the length of the delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir.2010); *see also Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("without evidence that defendants acted with the requisite bad intent in delaying the dispensation of his medication [plaintiff's] allegations are insufficient to sustain a deliberate indifference claim").  Here, the record does not support a finding that Plaintiff sufficiently communicated to Johnson a harm significant enough to warrant immediate treatment.

Therefore, even looking at the facts in the light most favorable to the nonmoving party, the Court cannot conclude that Johnson knew Plaintiff faced an excessive risk to his health and then disregarded that risk by failing to take reasonable measures to address it.  In short, the mere fact that Johnson did not arrange for Plaintiff's immediate medical treatment for his neck pain right after Plaintiff had already seen a nurse for his insulin shot does not show a culpable mental state. *See also Kendricks v. Williams*, 19 C 4568, 2021 WL 1577800, at *4 (N.D. Ill. Apr. 22, 2021) (the mere fact that [the defendant] did not arrange for medical treatment for [the plaintiff] does not mean that she was deliberately indifferent to a serious medical need).

For the reasons set forth above, Defendant Johnson is entitled to summary judgment on Count Three.  Because the Court finds Defendant did not violate Plaintiff's constitutional rights, it need not consider the question of qualified immunity.

<u>Conclusion</u>

Based on the foregoing, the Motion for Summary Judgment filed by Defendant Derek Johnson (Doc. 23) is **GRANTED**.  Plaintiff's claims against Defendant Derek Johnson are **DISMISSED WITH PREJUDICE** and the Clerk of Court is **DIRECTED** to enter judgment

accordingly.    All pending motions are denied as moot and all upcoming court settings are vacated.


**IT IS SO ORDERED.**

**DATED: January 11, 2024**


_s/_  *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**